UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE


CIVIL ACTION NO. 08-95-GWU


BRONDA MEADE,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to
        Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
        404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Bronda Meade, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative joint disease and degenerative disc disease of the lumbar spine, urinary tract spasms and infection, depression, anxiety, and substance abuse in remission.  (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Meade retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 19-26).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 42, high school education, and work experience as an orderer and stock clerk could perform any jobs if she were limited to "medium" level exertion, and had a moderately limited ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or

proximity to others without being distracted by them, interact appropriately with the general public and respond appropriately to changes in work setting. (Tr. 512). The ALJ specified that the plaintiff retained the capacity to understand and recall simple material, concentrate and persist at simple tasks in two-hour segments, function in an object-focused setting that requires little public contact, and adapt to routine changes. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 513).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Meade alleged disability due to severe nervousness, depression, and anxiety and some related problems such as high blood pressure and diarrhea. (Tr. 70-1). At the hearing, she testified that she had stopped her last job in 2001 because she was pregnant, because she was unable to stand on concrete as was required in her job, and was upset by dealing with people. (Tr. 482-3). She felt her main problem was panic attacks, and alleged having no less than 7 and as many as 15 of them per day. (Tr. 484). She was also depressed and did not like to leave her house. (Tr. 486). She had been hospitalized for her nerves on several occasions, most recently a week before the June 19, 2007 decision, and stated that

she was not nearly as depressed on a new medication, Cymbalta. (Tr. 487-8). She admitted that she had a drinking problem at the time of her psychiatric hospitalization at Three Rivers Medical Center in June, 2006. (Tr. 498). However, she had stopped drinking after that time. (Id.).

Although the plaintiff described some physical problems with her bladder, heart, breathing, and right knee (Tr. 490-3), the plaintiff does not challenge the ALJ's conclusion that she could perform medium level exertion with no non-exertional physical restrictions on appeal. The plaintiff does challenge the ALJ's conclusions regrading her mental restrictions.

The plaintiff underwent a consultative evaluation by Psychologist Brad Adkins on December 29, 2005. (Tr. 149). Somewhat in contrast to her testimony (Tr. 480), she was able to drive herself 20 miles to the evaluation. (Id.). Mrs. Meade described depression and daily crying spells and other depressive symptoms such as poor sleep and fatigue but no suicidal thoughts. (Tr. 150). She stated that she had been anxious and nervous as long as she could remember, had daily panic attacks, and difficulty shopping and being in public. (Id.). She was able to walk and do housework, but stated she had "difficulty in becoming motivated to perform those activities." Dr. Adkins administered a Personality Assessment Inventory, but Mrs. Meade's overall profile was judged to be invalid. (Id.). She had been divorced from an abusive husband and was remarried to a man with whom her relationship was

somewhat strained due to personality differences.  (Tr. 151).  She specifically denied a history of arrests for substance abuse problems.  Dr. Adkins noted that Mrs. Meade's intellectual functioning appeared to be in the average range, although she was only able to make very simple mathematical computations.  (Id.).  There was no abnormality in her recall, concentration, fund of information, judgment, or insight.  (Id.).  Dr. Adkins diagnosed a major depressive disorder, which was "severe" but without psychotic features, and panic disorder with agoraphobia.  (Tr. 152).  He assigned a current Global Assessment of Functioning (GAF) score of 62, reflecting mild difficulties in occupational, performance, or personal functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), (DSM-IV-TR), p. 34.  He felt that her condition would improve with psychotherapy and psychiatric intervention.  In terms of restrictions, he felt that the plaintiff appeared to have a slightly impaired ability to understand, retain, and follow instructions, an average ability to perform simple, repetitive tasks, and at least an average ability to relate to others including fellow workers and supervisors.  (Tr. 153).  She appeared to have "an impaired ability to adapt to the workplace, regarding her ability to tolerate the stress and pressures associated with day-to-day

work activity," and was not likely to do well in a work setting requiring her to be in the presence of a large number of people.  (Id.).[1]

Records from the Mountain Comprehensive Care Center show that Mrs. Meade was treated intermittently between 1995 and 2006 with complaints of anxiety and depression, but did not maintain treatment for a long period.  (Tr. 199-230).  In February, 2006, the first visit after her alleged onset date, she described difficulty with anxiety and panic attacks becoming worse and admitted having a recent DUI arrest.  (Tr. 184).  She admitted to drinking heavily in the past but claimed she did not need help in this area.  (Id.).  She was given a diagnosis of panic disorder without agoraphobia and "rule out" personality disorder, with a current GAF of 63, with 69 being the highest GAF score in the past year.  (Tr. 187).  It is noteworthy that the GAF scores given at this time were in the same range as Dr. Adkins's.

A few weeks later, on April 3, 2006, the plaintiff was admitted to Highlands Regional Medical Center with bladder and urinary tract problems, and it was noted that she had "severe anxiety and panic disorder problems." (Tr. 233).  No treatment was provided for these problems, however, and no functional restrictions were suggested.

---

[1]Presented with these restrictions, the VE testified that they would not change the job classifications or numbers given in response to the ALJ's original hypothetical question.

On June 14, 2006, the plaintiff was admitted to Three Rivers Medical Center for one week with an admitting diagnosis of depression, anxiety, and alcohol dependence, with a GAF of only 35. (Tr. 284). The plaintiff had received a DUI citation while driving with two of her children in the car, and the court had ordered her to receive treatment. (Id.). She admitted to having increased tolerance for alcohol and being unable to get herself drunk. She admitted to a past history of abusing the medication Klonopin, but denied any recent abuse.[2] She was given the medication Remeron and started on a withdrawal process for alcohol, which included daily therapy sessions, and was discharged after a week with no anxiety, depression, or withdrawal symptoms, and a stated willingness to attend Alcoholics Anonymous meetings. (Tr. 285-6). Her discharge diagnosis was somewhat different in that depression was replaced with bipolar disorder, but she continued to be assessed as having an anxiety disorder and alcohol dependence. (Tr. 286). No functional restrictions were given, but she was assigned a GAF score of 50, reflecting serious impairment according to the DSM-IV-TR.

State agency psychological reviewers Jane F. Brake and Ilse Sillers reviewed a portion of the evidence and opined that the plaintiff had an affective disorder, an anxiety-related disorder with "moderate" limitations in her ability to carry out detailed

_____

[2]As previously noted, she had denied any substance abuse problems to Dr. Adkins late in 2005.

12

instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 174-6, 263-5). They also specified that she could understand and recall simple material, concentrate and persist at simple tasks in two-hour segments, function in an object-focused setting that required little public contact, and adapt to routine changes, consistent with the ALJ's hypothetical question.

The ALJ found that the plaintiff's history of anxiety and depression had apparently been exacerbated by her use of alcohol, and that her condition improved after she received detoxification in 2006. (Tr. 23). He gave "preponderant" weight to the opinion of the state agency psychologists and to the opinion of Dr. Adkins, which he felt were consistent with each other and as showing only mild to moderate limitations. (Id.).

The plaintiff's argument on appeal is that her admission to Three Rivers Medical Center took place after the state agency physicians had rendered their opinions, and they were not able to comment on the GAF score reflecting "serious" symptoms which was given at her discharge from this institution. The plaintiff suggests that the ALJ functioned as his own medical expert in not giving any weight to the score. However, under the circumstances of this case, there is no reversible error. Any restrictions based on the GAF score of 50 would be speculative since the

plaintiff was abusing alcohol at the time and she testified that she had then stopped. Even if the GAF score was accurate at the time of discharge, the ALJ could reasonably have discounted it as not being currently reflective of her status. While he could have been more specific about his reasoning, it appears that in context he questioned the accuracy of the score where basically no symptoms existed at the time of discharge. (Tr. 22). Moreover, the plaintiff's GAF scores, as well as her actual restrictions, given when she was apparently not drinking, were consistent with the ALJ's conclusions. Nor was any evidence ever submitted concerning her psychiatric hospitalization which she stated had occurred just before the hearing in 2007. Accordingly, no useful purpose would be served by remanding the case.

The decision will be affirmed.

This the 11th day of March, 2009.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**